**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MARY OSHANA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 20 C 2041** |
| ) | |
| **AER LINGUS LIMITED,** ) | **Judge Rebecca R. Pallmeyer** |
| **a foreign corporation,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

Pending before the court are five motions *in limine*: three filed by Plaintiff [34, 35, 36] and two filed by Defendant [37, 38].  For the reasons explained here, the motions are granted in part and denied in part.

## BACKGROUND

On April 26, 2018, Plaintiff Mary Oshana was a passenger onboard a flight from Chicago to Dublin that was operated by Aer Lingus, Defendant.  (App. Stipulated Facts, Ex. 1 to Proposed Pretrial Order [31-1] at 1.)  The plane pushed back from the gate nearly an hour after it was scheduled to depart.  (*Id.*)  After the plane had pushed back from the gate, but before it took off, Oshana got up from her seat and entered the plane's lavatory.  (*Id.*)  What happened next is disputed.  Oshana claims that, while she was seated on the toilet with her pants and underpants around her ankles, a crew member of the plane ordered her to return to her seat immediately. (App. Pl.'s Trial Brief, Ex. 7 to Proposed Pretrial Order (hereinafter "Pl.'s Trial Brief") [31-7] at 1-2.)  She contends that before she had time to pull her pants up, the crew member unlocked the lavatory door from the outside, grabbed Oshana, and pushed her into her seat.  (*Id.* at 2.)  She claims to have experienced physical pain from "hitting the armrest when the flight attendants threw her into her seat."  (*Id.* at 4.)  She also claims emotional distress from "having her genitals exposed in front of others."  (*Id.*)

Aer Lingus says "this account is a fabrication." (App. Def.'s Trial Brief, Ex. 8 to Proposed Pretrial Order [31-8] at 1.) It contends that when the crew member unlocked the lavatory door, Oshana had her pants "pulled up" and was "fixing her trousers." (*Id.* at 2.) Defendant further claims that while Oshana was verbally directed to take a seat, "[a]t no time did any crewmember make physical contact with Plaintiff." (*Id.* at 2-3.)

Oshana brings suit to recover money damages under an international treaty known as the Montreal Convention. (Pl.'s Trial Brief at 1.) Article 17 of the Montreal Convention provides that an international carrier "is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Convention for the Unification of Certain Rules for International Carriage by Air (hereinafter "Montreal Convention"), art. 17, May 28, 1999, S. Treaty Doc. 106-45, ICAO Doc. No. 9740. Article 20 of the Convention states that if the damage "was caused or contributed to" by the passenger, "the carrier shall be wholly or partly exonerated from its liability." *Id.* art. 20. As explained here, the parties disagree about the admissibility of a variety of evidence and seek pretrial rulings on these issues.

## DISCUSSION

Excluding evidence before trial is generally disfavored. The court will grant a motion *in limine* to bar evidence only where that evidence is clearly not admissible for any purpose. *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). The moving party carries the burden of meeting this high standard. *Euroholdings Capital & Inv. Corp. v. Harris Trust & Sav. Bank*, 602 F. Supp. 2d 928, 934 (N.D. Ill. 2009). If the burden is not met, the evidentiary ruling should be deferred until trial. *Green v. Goodyear Dunlop Tires N. Am., Ltd.*, No. 08-472-GPM, 2010 WL 747501, at *1 (S.D. Ill. Mar. 2, 2010). Even if the burden is met and the court grants the motion, the court can change its ruling at trial. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). In considering or reconsidering evidentiary issues at trial, the court will have

2

the benefit of understanding "the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Casares v. Bernal*, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011).

I.      **Plaintiff's Motion *in Limine* [34] Regarding the Application of Article 20 and 21**

In its minute entry of August 2, 2021, the court noted that the parties disputed "whether Articles 20 or 21 [of the Montreal Convention] apply and support an instruction to the jury on the issue of exoneration or comparative/contributory fault." (Aug. 2, 2021 Minute Entry [33].) In briefing this issue, the parties now appear to be largely in agreement that Article 20 and pure comparative negligence apply to this case. (Pl.'s Mot. *in Lim.* Regarding the Application of Article 20 and 21 (hereinafter "Pl.'s Mot *in Lim.* on Article 20") [34] at 1; Def.'s Resp. Regarding the Application of Article 20 and 21 (hereinafter "Def.'s Resp. on Article 20") [43] at 1; *see Quevedo v. Iberia Lineas Aereas de España, Sociedad Anónima Operadora Co.*, No. 17-21168, 2019 WL 3804126, at *1-2 (S.D. Fla. Aug. 13, 2019).) Accordingly, the parties agree to language set forth in Plaintiff's new Requests to Charge Nos. 5, 6, 7, 8, and 9, proposed jury instructions that contain the language of comparative negligence. Oshana has withdrawn her earlier proposed Charge No. 4 and her earlier proposed Verdict Form A. (App. Proposed Jury Instrs., Ex. 9 to Proposed Pretrial Order (hereinafter "Proposed Jury Instrs.") [31-9] at 32, 33.)

The remaining disagreement relates to the parties' competing proposed verdict forms. Oshana's proposed Verdict Form,[1] she contends, "incorporates defendant's claim of contributory negligence." (Pl.'s Mot *in Lim.* on Article 20 at 2.) Defendant contends that its proposed Verdict Form[2] "more clearly addresses the elements of Plaintiff's claim and already adequately addressed

---

[1]      It reads, in relevant part: "[A]ssuming that 100% represents the total combined fault of Mary Oshana and Aer Lingus Limited, we find that the percentage of negligence attributable solely to Mary Oshana is _____%." (Plaintiff's Request to Charge No. 10, Ex. 7 to Pl.'s Mot *in Lim.* on Article 20 [34-7] at 15.)

[2]      It reads, in relevant part: "Was MARY OSHANA's bodily injury proximately caused by her refusal to comply with the flight attendants' request to exit the lavatory? If your answer to question number 4 is YES proceed no further and sign and date this Verdict Form in the space

comparative fault." (Def.'s Resp. on Article 20 at 1.) Oshana states that her proposed form is "based on the Illinois Pattern Jury Instructions (Civil)," it is "simpler for the jury to understand and easier to follow," and it avoids "[t]he multiple problems with the defendant's proposed form." (Pl.'s Reply Regarding the Application of Articles 20 and 21 [52] at 1.)

Having reviewed the proposed forms, the court agrees that Oshana's proposed verdict form (set forth as Proposed Charge No. 10) is appropriate. As Oshana notes, it makes sense to use the word "cause" rather than the less-familiar (and sometimes confusing) expression "proximate cause" which appears in Defendant's proposed form. (*See id.*) The court also agrees with Plaintiff that the fourth question on Defendant's proposed form is misleading because it states that if Oshana's injury was caused by her refusal to comply with Defendant's request, then she is not entitled to any damages. As noted, the parties have agreed that pure comparative negligence applies in this case, meaning that this language in Defendant's proposed form is overbroad; if her refusal to comply with Defendant's request was less than the sole cause of her injury, she may nevertheless be entitled to recover from Defendant.

Plaintiff's Motion *in Limine* Regarding the Application of Article 20 and 21 [34] is granted.

## II.    Plaintiff's Motion *in Limine* [35] Regarding the August 26, 2017 Event

Oshana moves to bar evidence or argument of certain facts related to an incident that predated this case. (Pl.'s Mot. *in Lim.* Regarding the Aug. 26, 2017 Event [35] at 1.) Specifically, on August 26, 2017, Plaintiff and her mother went to the United Center to see a concert but were "wrongfully accused of possessing counterfeit or stolen tickets." (*Id.*) Following that accusation, Oshana and her mother were allegedly "physically escorted" out of the venue, which was "emotionally upsetting and caused her anxiety." (*Id.*) In her motion, Oshana acknowledges that "[i]n light of the emotional damages claimed in this case, she agrees that the fact[ ] that she had an experience which caused her emotional upset and anxiety, and that she was prescribed

---

below. If your answer to question number 4 is NO, proceed to question number 5." (Proposed Jury Instrs. at 45.)

4

medication to help her cope with those feelings, are relevant." (*Id.*) But Oshana moves to exclude any additional facts, such as "the details of the United Center incident" or "the fact that a claim for damages was made." (*Id.* at 2.)

Defendant opposes the motion. (Def.'s Resp. Regarding the Aug. 26, 2017 Event (hereinafter "Def.'s Resp. on Aug. 26") [44] at 4.) Defendant acknowledges that Oshana's prior acts, including filing a lawsuit, may not be admitted as evidence of her character, but contends it is admissible for other purposes. Specifically, Defendant contends that this evidence shows that Oshana's present claim is nearly identical to one she made before, which demonstrates a "*modus operandi*" and "bears on her credibility." (*Id.* at 2-3.) Second, Defendant argues the United Center incident "provide[s] an alternative explanation for Plaintiff's continuing stress and anxiety during the period after the April 2018 Aer Lingus incident." (*Id.* at 3.)

In addressing these arguments, the court notes, initially, that the parties disagree about the legal framework to be used for admitting evidence of prior acts under Federal Rule of Evidence 404(b). Defendant urges the court to apply a four-part test outlined 20 years ago by the Seventh Circuit. (*Id.* at 2 (citing *Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 775-76 (7th Cir. 2001)).) As Plaintiff observes, however, that four-part test was abandoned by the Seventh Circuit in *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (en banc). (Pl.'s Reply Regarding the Aug. 26, 2017 Event (hereinafter "Pl.'s Reply on Aug. 26") [51] at 1.) In *Gomez*, the court stated that the "four-part test for evaluating the admissibility of other-act evidence has ceased to be useful" and thus the court "abandon[ed] it in favor of a more straightforward rules-based approach." *Gomez*, 763 F.3d at 853. The starting point for this and "[a]ll evidentiary questions," the court stated, is Rule 402, which requires admissible evidence to be relevant. *Id.* If the evidence is relevant, Rule 404(b) will exclude it "if the purpose is to show a person's propensity to behave in a certain way," but 404(b) will allow it if the purpose is "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* (quoting FED. R. EVID. 404(b)). It is not enough for a party to simply "point to a purpose in the 'permitted' list," though; other-act

evidence is permissible "only when its admission is supported by some propensity-free chain of reasoning." *Id.* at 856 (citing *United States v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013) ("When one looks beyond the purposes for which the evidence is being offered and considers what inferences the jury is being asked to draw from that evidence, and by what chain of logic, it will sometimes become clear . . . that despite the label, the jury is essentially being asked to rely on the evidence as proof of the defendant's propensity to commit the charged offense.")).  Finally, even if evidence is relevant and supported by a propensity-free chain of reasoning, it is still subject to Rule 403, which gives the district court discretion to exclude evidence if its probative value is "substantially outweighed by a danger of . . . unfair prejudice." *Gomez*, 763 F.3d at 856-57 (citing FED. R. EVID. 403).

Defendant cites three cases for its first relevance argument—that the United Center incident demonstrates a *modus operandi* that bears on Oshana's credibility.  None of those cited cases satisfy the court that the proposed evidence is inadmissible under "some propensity-free chain of reasoning." *Gomez*, 763 F.3d at 856.  In Defendant's first cited case, *Gastineau v. Fleet Mortgage Co.*, 137 F.3d 490, 495 (7th Cir. 1998), the Seventh Circuit concluded that the trial court did not abuse its discretion in admitting evidence of the plaintiff's prior lawsuits against other employers, because the evidence "tend[s] to establish something other than [the plaintiff's] propensity to sue his employers."  The court found that the evidence "tends to show [the plaintiff's] *modus operandi* of creating fraudulent documents in anticipation of litigation against his employers." *Id. Gastineau*, where the court applied the now-outdated four-part test, 137 F.3d at 494-95, does not satisfy this court that the United Center evidence must be admitted.  A conclusion that the trial court did not err in admitting contested evidence is not a ruling that such evidence must be admitted. *See id.* at 494 (quoting *United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir. 1987)) ("Discretion, when exercised, will rarely be disturbed."); Jonathan S. Masur & Lisa Larrimore Ouellette, *Deference Mistakes*, 82 U. CHI. L. REV. 643, 646 (2015) ("Just because an evidentiary holding is not an abuse of discretion does not mean that a contrary holding

6

is not allowed."). In addition, the defendant in *Gastineau* was the fourth employer the plaintiff had sued. *Gastineau*, 137 F.3d at 495. Defendant in this case identified just one other potentially similar incident. This court—applying the modern framework—finds that Oshana's one prior lawsuit alleging emotional distress does not amount to a *modus operandi* as in *Gastineau*.

Defendant's other case citations are no more persuasive. In *Tomaino v. O'Brien*, 315 Fed. App'x 359, 361 (2d Cir. 2009), the court allowed testimony regarding the plaintiff's "five previous occasions on which he had made strikingly similar claims." This is distinguishable for the same reasons as stated in *Gastineau*, including the fact that five prior incidents provide much greater support to a common scheme argument than does a single prior incident. Finally, Defendant cites *Mathis*, which, as noted, applied the outdated four-part test; moreover, the case actually *affirmed* the trial court's exclusion of evidence that the plaintiff had previously brought similar claims, and so it does not support Defendant's argument. *Mathis*, 269 F.3d at 776-77. As the *Mathis* court noted, "a plaintiff's litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant." *Id.* at 776 (quoting *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988)). Similarly, *Gomez* instructed courts to apply Rule 403 (which protects against such bias) "with full force," because "[o]ther act evidence raises special concerns about unfair prejudice." *Gomez*, 763 F.3d at 856-57 (quoting *United States v. Miller*, 673 F.3d 688, 696 (7th Cir. 2012)). In this case—in addition to the fact that the United Center incident is really propensity evidence—the risk that a jury would be prejudiced against Oshana's present claim because she previously brought a similar one significantly outweighs any potential value this evidence might have. Thus, the court rejects Defendant's first relevance argument.

Defendant's second relevance argument is that "the United Center incident and legal claim provide an alternative explanation for Plaintiff's continuing stress and anxiety during the period after the April 2018 Aer Lingus incident." (Def.'s Resp. on Aug. 26 at 3.) The court agrees but notes that Oshana "does not object to introduction of testimony, evidence or argument that the

plaintiff suffered from anxiety prior to the subject April 26, 2018 incident, or that there was an event in August 2017, which caused her anxiety, after which she was prescribed medication to treat that condition."  (Pl.'s Reply on Aug. 26 at 4-5.)  Evidence relating to the United Center incident that is within the scope suggested by Plaintiff is sufficient for Defendant to make arguments about alternative causes of Oshana's symptoms.  Thus, the court grants Plaintiff's motion to bar evidence or argument of the specific facts of what occurred at the United Center in August 2017, and evidence or argument of the fact that a claim resulted from that incident.

## III.    Plaintiff's General Motions *in Limine* [36]

In a court filing titled "Plaintiff's General Motions *in Limine*," Plaintiff makes five requests. The parties came to a resolution on four of those requests:  First, the parties have agreed to entry of an order "barring all non-party witnesses from the courtroom prior to the time that their testimony is completed."  (Pl.'s General Mots. *in Lim.* [36] at 1.)  Similarly, evidence "that the plaintiff's medical bills were paid in whole or part by insurance" will be excluded unless Plaintiff argues "that she did not pursue medical treatment because of the cost."  (*Id.*; Def.'s Resp. to General Mots. *in Lim.* (hereinafter Def.'s Resp. to Gen. Mots.") [42] at 1; Pl.'s Reply to General Mots. *in Lim.* (hereinafter "Pl.'s Reply to Gen. Mots.") [49] at 1.)

Third, the parties agree that there will be no "argument, questioning or testimony regarding whether anyone other than plaintiff Mary Oshana was injured in the subject incident."  (Pl.'s General Mots. *in Lim.* at 1; *see* Def.'s Resp. to Gen. Mots. at 2.)  But Defendant is free to offer evidence that the flight attendants "acted as they did because they perceived a safety risk."  (Pl.'s Reply to Gen. Mots. at 1; *see* Def.'s Resp. to Gen. Mots. at 2.)  Finally, the parties agree that there will be no "testimony or argument that the defendant will be responsible for paying any part of a judgment against it."  (Pl.'s General Mots. *in Lim.* at 2.)

That leaves Plaintiff's Request 4, in which Oshana "requests that this Court enter an Order *in limine* barring argument, questioning or testimony on the absence of trial testimony from any other passenger on the plane, or from any medical provider other than Barbara Searle, Ph.D."

8

(*Id.*)  Oshana argues that other passengers and medical providers are not "under the plaintiff's control" but are instead "equally available to the plaintiff and the defendant."  (*Id.*)  Oshana argues that such an order would be consistent with the parties' jointly submitted Request to Charge No. 15, which states that "[t]he law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial."  (*Id.*; Proposed Jury Instrs. at 17.)

Defendant argues that the "extraordinary nature" of Oshana's allegations—pulled from the lavatory while partially nude, dragged through the aisle, and thrown into her seat—would "almost certainly" have been "witnessed and commented upon by other passengers . . . if it had occurred as she alleges."  (Def.'s Resp. to Gen. Mots. at 2.)  "By contrast," Defendant argues, "the incident as described by the Aer Lingus flight attendants was much less sensational and may have passed without notice by other passengers on the flight."  (*Id.* at 2-3.)  Defendant states that it disclosed a passenger list with contact information to Oshana in October 2020, though Oshana states that the list only included contact information for six passengers, and just two of those passengers were sitting in seats where they could have potentially witnessed the incident.  (*Id.* at 3; Pl.'s Reply to Gen. Mots. at 2.)  According to Defendant, the fact that Plaintiff "will not produce a non-party witness, or a cell phone video or photograph taken by another passenger, is relevant to the credibility of the party witnesses."  (Def.'s Resp. to Gen. Mots. at 3.)

Defendant also objects to Oshana's request to bar questioning or testimony about the absence of medical providers.  (*Id.*)  Such evidence, Defendant argues, is relevant to the existence or severity of Oshana's physical and mental injuries.  (*Id.*)  Oshana notes that she already stipulated she did not seek medical attention for her injuries, and Defendant is free to argue that fact to the jury.  (Pl.'s Reply to Gen. Mots. at 2.)  Oshana argues it "would be unfair to allow the defendant to criticize the plaintiff for not calling a doctor as a witness when she admits she did not seek treatment from a doctor."  (*Id.*)

Notably, Defendant states that it "does not request a missing witness charge."  (Def.'s Resp. to Gen. Mots. at 3.)  Indeed, Seventh Circuit Pattern Jury Instruction 1.19 permits drawing

an adverse inference from the failure to produce a witness only if, among other things, the witness was under the control of the party who failed to produce that evidence. That instruction is the exception to "the rule that counsel may not argue an adverse inference from an opposing party's failure to call a witness." *United States v. Ogoke*, 860 F.3d 924, 930 (7th Cir. 2017). The Seventh Circuit has long held that in order to invoke that exception, "the complaining party must establish that the missing witness was peculiarly in the power of the other party to produce." *Oxman v. WLS-TV*, 12 F.3d 652, 661 (7th Cir. 1993). Defendant has not attempted to demonstrate that any particular missing witness is under Oshana's control and therefore may not argue that Oshana's failure to call a particular passenger or physician raises an adverse inference.

Still, the court cannot grant Oshana's request as it is worded. Though *Ogoke* and *Oxman* confirm that the absence of a particular witness does not support an adverse inference, the case law does not bar comment on the overall inadequacy of Oshana's evidence, including the general absence of witness testimony. That is, Defendant may not argue at trial that Oshana's failure to call specific persons, such as a passenger across the aisle from Oshana, or Oshana's general practice doctor, should lead the jury to draw an adverse inference about how they might have testified. But Defendant remains free to "point out holes and deficient evidence in [Oshana's] case." *Jones v. City of Chicago*, No. 14-cv-4023, 2017 WL 413613, at *8 (N.D. Ill. Jan. 31, 2017); *see Ross v. City of Chicago*, No. 13 C 751, 2014 WL 1344279, at *1 (N.D. Ill. Apr. 3, 2014) ("Defendants correctly point out that it is a fundamental trial strategy to point to the absence of evidence to support a plaintiff's case such as the absence of eyewitness testimony."). And it is permissible for Defendant to argue that insufficient corroborating evidence casts shade on Oshana's own credibility. *See Lewis v. City of Chicago Police Dept.*, 590 F.3d 427, 444 (7th Cir. 2009) ("[In a prior case, the Seventh Circuit] drew a distinction between asking a jury to infer that a missing witness's testimony would be unfavorable (which is not allowed according to the missing-witness rule) and asking a jury to question a party's credibility because it produced no corroborating evidence (which is permissible).").

Finally, Request to Charge No. 15[3] does not compel the court to enter Oshana's proposed order. Request to Charge No. 15 is consistent with *Ogoke* and *Oxman* in that it recognizes that the failure to call any particular witness does not give rise to an adverse inference. But while the law does not require any party to call as a witness *every* person who might have knowledge, a party's failure to call *any* persons with knowledge is a matter of fair comment.

Oshana's General Motions *in Limine* [36] is granted as to Requests 1, 2, 3, and 5, and denied as to Request 4.

## IV.    Defendant's Motion *in Limine* [37] on Bodily Injury Requirement

Defendant makes two arguments in its motion. First, Defendant argues that Oshana can only recover damages for emotional distress where her emotional distress was caused by her bodily injury. (Def.'s Mot. *in Lim.* on Bodily Injury Requirement (hereinafter "Def.'s Mot. on Bodily Injury") [37] at 3-9.) Second, Defendant argues that Oshana cannot establish a physical injury as required in Article 17 of the Montreal Convention. (*Id.* at 9-11.) As the court reads this argument, it appears to be, in effect, a motion for summary judgment disguised as a motion *in limine*. Indeed, Defendant concludes that "[t]he evidence presented at trial and instructions to the jury should reflect that the law controlling Plaintiff's claim, the Montreal Convention, does not permit recovery for [the damages Oshana claims]." (*Id.* at 3.) The court rejects both of Defendant's arguments and denies the motion.

### A.    Emotional Distress Damages and the "Causation Rule"

Oshana claims both physical bodily injury and emotional distress. In her trial brief, Oshana states that she plans to testify about and prove that "[a]s a result of th[e] incident, the plaintiff had pain in her arm, pain and bruising in her hip and buttocks as a result of hitting the armrest, and anxiety and feelings of insecurity and being overwhelmed." (Pl.'s Trial Brief at 2.) While her

---

[3]    It reads, in relevant part: "The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial." (Proposed Jury Instrs. at 17.)

allegations of physical and mental injuries both resulted from the same general incident, Oshana specifies that the physical injuries were "a result of being grabbed" and "hitting the armrest when the flight attendants threw her into her seat." (*Id.* at 3-4.) In contrast, the emotional injuries "were the result of having her genitals exposed in front of others." (*Id.* at 4.) Thus, Oshana does not appear to argue that her physical bodily injuries were the cause of her emotional injuries.

Defendant notes that Article 17 of the Montreal Convention states that a "carrier is liable for damage sustained *in case of death or bodily injury* of a passenger." Montreal Convention (emphasis added). The Supreme Court interpreted a similar phrase from the Warsaw Convention—the predecessor to the Montreal Convention—as barring recovery for "purely mental injuries." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 534 (1991). The Court in *Floyd* explicitly declined to decide whether, as in Oshana's case, a plaintiff may recover for "mental injuries that are accompanied by physical injuries." *Id.* at 552-53. That issue has not yet been decided in the Seventh Circuit. Defendant argues that other courts have "held that the text of Article 17 and the reasoning of *Floyd* permit recovery of mental injuries 'only to the extent that they have been caused by bodily injuries.'" (Def.'s Mot. on Bodily Injury at 4 (citing *Hansen v. Delta Airlines*, No. 02 C 7651, 2004 WL 524686, at *3 (N.D. Ill. Mar. 17, 2004)).) According to Defendant, this "causation rule" has been applied "consistently" by the Second, Third, Fifth, and Eighth Circuits. (*Id.* at 4-5 (collecting cases).) Defendant urges this court to adopt such a rule as well, meaning that Oshana cannot claim damages for her emotional injuries, as they were not caused by her bodily injuries.

Oshana views the modern state of the law differently. She points out that, since adoption of the Montreal Convention, no court of appeals has decided this issue other than the Sixth Circuit. (Pl.'s Resp. on Bodily Injury Requirement (hereinafter "Pl.'s Resp. on Bodily Injury") [45] at 3.) And that court, which considered the issue in great detail, declined to apply the causation rule. (*Id.* (citing *Doe v. Etihad Airways*, 870 F.3d 406 (6th Cir. 2017)).) *Doe* involved a passenger who suffered emotional distress after being pricked by a hypodermic needle while onboard an

12

international flight. *Doe*, 870 F.3d at 409. The court concluded that, to recover damages for emotional distress under the Montreal Convention, a passenger must have a physical injury (such as a pricked finger), but the emotional distress need not be caused by the physical injury. *Id.* Similarly, Oshana contends, she is entitled to seek recovery for all of her injuries, even though her emotional distress was not the result of her physical injuries. (Pl.'s Resp. on Bodily Injury at 3.) As explained here, the court agrees.

First, Defendant's reference to what this court "held" in *Hansen* is misleading. (*See* Def.'s Mot. on Bodily Injury at 4.) In the portion of *Hansen* that Defendant cites, the court denied the defendant's motion to dismiss, because on the pleadings, the Warsaw Convention did not preempt the plaintiff's state law claims. *Hansen*, 2004 WL 524686, at *2-7. In dicta, the court cited—but did not discuss—*Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 385 (2d Cir. 2004), in which the Second Circuit applied the causation rule. But the causation rule was not directly applicable to resolving the preemption issue before the court in *Hansen*; rather, the issue was whether the plaintiff was "'in the course of any of the operations of embarking' under Article 17" of the Warsaw Convention. *Hansen*, 2004 WL 524686, at *3 (citation omitted). The *Hansen* ruling's lone citation in dicta to a court in another jurisdiction that applied the causation rule does not control the issue in this case.

Turning next to Defendant's circuit court citations, the court begins with *Ehrlich*, the Second Circuit case cited in *Hansen*. That court held that "the negotiating history of the Warsaw Convention demonstrates that the [French] phrase 'dommage survenu en cas de . . . lésion corporelle'[4] should be read to impose a causation requirement." *Ehrlich*, 360 F.3d at 385. Similarly, the Eighth Circuit held that "damages for mental injury must proximately flow from physical injuries caused by the accident," because that approach "provides full compensation for

---

[4] This phrase roughly translates to English as "damage sustained in the event of . . . bodily injury," though the *Ehrlich* court found that there were multiple potential interpretations of certain words. *Ehrlich*, 360 F.3d at 375-79.

the victim within the bounds established by the Warsaw Convention." *In re Air Crash at Little Rock Arkansas, on June 1, 1999*, 291 F.3d 503, 511 (8th Cir. 2002). As Oshana points out, *Ehrlich* and *In re Air Crash* interpreted the Warsaw Convention, whereas the Montreal Convention governs this case. (Pl.'s Resp. on Bodily Injury at 3.) Defendant notes that "[c]ourts routinely look to precedent interpreting the Warsaw Convention when dealing with similar provisions in the Montreal Convention." (Def.'s Mot. on Bodily Injury at 3 n.2 (citing *Shabotinsky v. Deutsche Lufthansa AG*, 245 F. Supp. 3d 1018, 1023 n.3 (N.D. Ill. 2017)).) The court agrees that it may frequently be useful to turn to Warsaw Convention precedent when interpreting the Montreal Convention, but also agrees with the Sixth Circuit in *Doe* that there is good reason not to do so on this particular issue.

In *Doe*, where the plaintiff had been pricked by a hypodermic need in the seatback pocket in front of her, she claimed damages for both her physical injury (her pricked finger) and the "mental distress, shock, mortification, sickness and illness, outrage and embarrassment" that flowed from her "possible exposure to various diseases." *Doe*, 870 F.3d at 409 (internal quotation marks omitted). The district court granted the defendant partial summary judgment as to the passenger's claims for emotional distress damages. *Id.* at 410. On appeal, the Sixth Circuit, "after analyzing both the plain text of the [Montreal Convention] and relevant persuasive authorities," held that the district erred when it applied the causation rule. *Id.* at 411, 433-34.

The court began with the text of the treaty and decided that a defendant's liability for damages sustained "in case of death or bodily injury" does not mean a defendant is liable only for damages "caused by death or bodily injury." *Id.* at 413. The court observed, first, that "in case of" is clearly conditional, not causal language. *Id.* Second, the court noted that Article 17 imposed a separate causal requirement, which indicates that the decision not to impose a causal requirement here was intentional. *Id.* ("The drafters' use of 'caused' to express that an accident must have caused the bodily injury thus provides additional support for our conclusion that the drafters did not, in the very same sentence, use 'in case of' *also* to mean 'caused by.'").

14

The *Doe* court then considered the holding in *Ehrlich*, which addressed language in the Warsaw Convention. *Doe* found the *Ehrlich* court's "purposivist interpretation of a French-language predecessor treaty signed in 1929" unpersuasive, particularly because a purposivist analysis of the Montreal Convention leads to a different conclusion. *Id.* at 417. In a lengthy examination of the "[h]istory and [p]urpose of the Montreal Convention," the court identified the primary purpose of the Warsaw Convention as "limiting the liability of air carriers in order to foster the growth of the fledgling commercial aviation industry." *Id.* at 420 (quoting *Floyd*, 499 U.S. at 546). When the Montreal Convention was signed 70 years later, the industry was hardly "fledgling," and "the purpose of the Montreal Convention was not to protect the aviation industry, but rather to provide a modernized uniform liability regime for international air transportation." *Id.* at 423 (internal quotation marks omitted). "In short," the *Doe* court found, "the Montreal Convention replaced a restrictive, pro-airline industry regime, with a treaty that favors passengers rather than airlines." *Id.* (internal quotation marks and citations omitted). And the causation rule, which is unsupported by the plain text of the treaty, does not align with that new purpose.

Defendant claims that the reasoning in *Doe* is flawed for two reasons. First, Defendant argues that the court's "idiosyncratic reading of Article 17 ignores the drafting history of the Montreal Convention." (Def.'s Mot. on Bodily Injury at 6.) Defendant cites a district court opinion stating that the Montreal Convention drafters tried "'wherever possible' to retain the language of the Warsaw Convention 'with the purpose of not disrupting the existing jurisprudence.'" (*Id.* (quoting *In re Air Crash at Lexington, KY, Aug. 27, 2006*, 501 F. Supp. 2d 902, 907-08 (E.D. Ky. 2007)).) But the operative language retained by the Montreal Convention—"in case of death or bodily injury"—was found to be "ambiguous" by the court in *Ehrlich*, which is why that court looked to the "purposes of the treaty." *Ehrlich*, 360 F.3d at 385. And as *Doe* demonstrates, because the purpose of the Warsaw Convention differs from that of the Montreal Convention, not all cases interpreting that earlier treaty are authoritative. Notably, *Doe* accepted the general premise that Warsaw Convention precedent remains relevant. *See Doe*, 870 F.3d at 412 ("[I]nterpretations of

the Warsaw Convention have at least some persuasive value in interpreting parallel provisions of the Montreal Convention.") But the Montreal Convention is a superseding treaty, and thus where there is reason to depart from past jurisprudence—as there is in this case—the new interpretation governs.

Second, Defendant argues that "jettisoning the causal link requirement would effectively nullify the Supreme Court's holding in *Eastern Airlines, Inc. v. Floyd*." (Def.'s Mot. on Bodily Injury at 7.) Here, too, the court disagrees. As previously noted, *Floyd* prohibited recovery of purely mental injuries; it expressly left unanswered the question whether a plaintiff claiming both physical and mental injuries is entitled to recovery. As Defendant sees things, the causation rule is the only thing stopping a plaintiff from alleging "some *de minimis*, subjective injury" to open a "back door to recovery of purely psychological injuries." (*Id.* (internal quotation marks omitted).) Perhaps, but as Defendant recognizes elsewhere (see below), a "bodily injury" under Article 17 is something more than *de minimis* physical harm. *See, e.g.*, *Tharp v. Delta Air Lines, Inc.*, No. 3:20-CV-00258, 2021 WL 3375662, at *2, *8 (D. Or. Aug. 3, 2021) (holding that the plaintiff did not suffer a "bodily injury" when another passenger repeatedly touched her during the flight).[5]

Nor is it clear that the Supreme Court would come to the same conclusion were it to interpret Article 17 of the Montreal Convention. In reaching its conclusion in *Floyd*, the Court noted the purpose of the Warsaw Convention: "Whatever may be the current view among Convention signatories, in 1929 the parties were more concerned with protecting air carriers and

---

[5]     In the course of arguing this point, Defendant also states that the "case at bar is comparable to *Carey* [*v. United Airlines*, 255 F.3d 1044 (9th Cir. 2001)]. (Def.'s Mot. on Bodily Injury at 7-8.) Defendant notes that *Carey* involved a "heated exchange in which flight attendants allegedly proceeded to humiliate [the plaintiff] in front of the other . . . passengers," and the plaintiff claimed "physical manifestations" of "nausea, cramps, perspiration, nervousness, tension, and sleeplessness." (*Id.* at 7 (citing *Carey*, 255 F.3d at 1046).) The court does not find *Carey* comparable, as Oshana's alleged bodily injuries were not "manifestations" of her humiliation, but rather were the product of alleged rough physical treatment by the flight attendants. The court is also not persuaded by Defendant's argument that "as in *Carey*, Plaintiff's claim is essentially for infliction of emotional distress." (*Id.* at 8.) As discussed further below, Oshana has in fact alleged a "bodily injury" under Article 17 of the Montreal Convention.

fostering a new industry rather than providing a full recovery to injured passengers." *Floyd*, 499 U.S. at 546. As discussed, that purpose is outdated. In any event, the court need not speculate as to what the Supreme Court would do today; *Doe* remains consistent with *Floyd* because the issues in the two cases were different.

Finally, the court is unmoved by Defendant's citations to cases in the Fifth and Third Circuits. *See Bassam v. Am. Airlines*, 287 F. App'x 309, 317 (5th Cir. 2008) ("[E]motional injuries are not recoverable under Article 17 . . . unless they were caused by physical injuries."); *Terrafranca v. Virgin Atl. Airways Ltd.*, 151 F.3d 108, 111 (3d Cir. 1998) (holding that to recover under Article 17, the passenger "must demonstrate direct, concrete, bodily injury as opposed to mere manifestation of fear or anxiety"). As Oshana points out, these cases did not involve allegations of a physical injury, and thus did not address the causation rule issue left unresolved by *Floyd*. (Pl.'s Resp. on Bodily Injury at 3; *see Bassam*, 287 Fed. App'x at 317 ("Bassam has not alleged any physical injury."); *Terrafranca*, 151 F.3d at 112 (holding that the plaintiff had "purely psychic injuries that do not qualify as bodily injuries under the Warsaw Convention"). In addition, *Bassam* is unpublished, and *Terrafranca*—like *Ehrlich* and *In re Air Crash*—interpreted the Warsaw Convention. For these reasons, Defendant's additional citations do not advance its argument.

### B. Bodily Injury Requirement

Defendant argues that Oshana's "generalized pain" is "insufficient to satisfy the requirements of Article 17." (Def.'s Mot. on Bodily Injury at 9.) Defendant cites four cases, none binding on this court, as support for its argument that Article 17 requires proof of an "objective and identifiable injury to the body" and requires that injury to be more than "*de minimis* . . . to support a much more significant claim for emotional distress." (*Id.* at 9-10 (citations omitted).) Article 17 only imposes liability on the condition that a passenger suffers death or bodily injury; thus, if the court grants this motion *in limine*, Oshana could recover nothing. But the parties'

17

dispute over the legitimacy and severity of Oshana's claimed bodily injuries are issues for the jury to decide, not an issue for the court to rule on *in limine*.

Moreover, the court agrees with Oshana that the cases Defendant cites are not controlling and are factually distinguishable. (Pl.'s Resp. on Bodily Injury at 1-3.) In *Tharp*, noted above, the plaintiff alleged another passenger touched and brushed against her during the flight. *Tharp*, 2021 WL 3375662, at *4. The plaintiff in *Tharp* also conceded that the contact "did not cause lasting injuries." *Id.* The court declines to decide that, as a matter of law, Oshana's allegations of pain and bruising after being roughly thrown into her seat are no more significant than the *de minimis* physical contact at issue in *Tharp*.

In *Salis v. Ghana Airways*, 9 A.D.3d 421, 422 (N.Y. App. Div. 2004), a passenger alleged that two of the airline's agents seized his handbag after he was told it was too heavy to qualify as carry-on luggage. The passenger alleged that in the act of taking his bag, they "twisted his arm." *Salis*, 9 A.D.3d at 422. As Oshana points out, it is not clear from the court's opinion whether the agents made any physical contact with the passenger, or if his arm was twisted when they took the bag out of his hands. (Pl.'s Resp. on Bodily Injury at 2.) Nor did the court say whether this incident caused the passenger any physical pain or suffering beyond his conclusory statement that he "suffered bodily injuries." *Salis*, 9 A.D.3d at 423. Again, this court is not prepared to say that a slight twist of the arm is analogous to Oshana's allegations. In *Rosman v. Trans World Airlines, Inc.*, 34 N.Y.2d 385, 388 (N.Y. 1974), where passengers claimed significant mental trauma after their plane was hijacked, the court held that "psychic trauma alone" was not compensable under the Warsaw Convention. *Rosman*, 34 N.Y.2d at 400. Oshana alleges more than psychic trauma. Finally, the plaintiff in *Liaw v. United Airlines, Inc.*, No. C 19-00396 WHA, 2019 WL 6251204, at *1 (N.D. Cal. Nov. 22, 2019), conceded that a faster-than-usual descent caused only a "minor" injury that "even he readily describe[d] as *de minimis*." Oshana has not conceded that her injuries are *de minimis*.

In sum, the court disagrees with Defendant's arguments that Oshana may only recover for emotional distress caused by a bodily injury and that Oshana's bodily injuries are insufficient as a matter of law to support recovery under Article 17. Accordingly, Defendant's Motion *in Limine* on Bodily Injury Requirement [37] is denied.

## V.    Defendant's Motion *in Limine* [38] Regarding Dr. Searle

Defendant argues that the court should not permit Dr. Searle, identified as a witness by Oshana in her Rule 26(a)(2) disclosure, to testify. Defendant argues that Oshana did not adhere to the disclosure requirements of Federal Rule of Civil Procedure 26(a)(2)(B), and that Dr. Searle's testimony would separately be inadmissible because it does not meet the relevancy and reliability requirements of Federal Rule of Evidence 702. (Def.'s Mot. *in Lim.* Regarding Dr. Searle [38] at 2.) Oshana argues that Dr. Searle's testimony is not subject to the disclosure requirements of Rule 26(a)(2)(B) because she is a treating physician under Rule 26(a)(2)(C). (Pl.'s Resp. Regarding Dr. Searle [46] at 2.) Oshana also argues that the record is ambiguous as to whether Dr. Searle's testimony would meet the requirements of Federal Rule of Evidence 702, and as such it should not be excluded at this time. Instead, Oshana suggests, the court should permit Defendant the opportunity to *voir dire* Dr. Searle before she testifies at trial to determine whether her opinion is the product of reliable principles and methods.

Dr. Searle is a counseling psychologist who met with Oshana four times between June 28 and August 3, 2018. (Def.'s Mot. *in Lim.* Regarding Dr. Searle at 1.) In response to a request from Plaintiff's counsel, Dr. Searle produced only a two-page "summary including diagnosis, clinical issues and treatment recommendations." (Dr. Searle Rep., Ex. 1 to Def.'s Mot *in Lim.* Regarding Dr. Searle (hereinafter "Dr. Searle Rep.") [40-1] at 2.) When Plaintiff asked Dr. Searle to supplement that summary with items called for by Federal Rule of Civil Procedure 26(a)(2)(B), Dr. Searle responded by saying that she did not feel equipped to be "such a witness after having met with [Oshana] only four times." (Pl.'s Counsel and Dr. Searle Emails, Ex. 3 to Pl.'s Resp. Regarding Dr. Searle (hereinafter "Emails") [46-3] at 1, 2; *see* FED. R. CIV. P. 26(a)(2)(B).) In the

email exchange that ensued, she stated, further, that, in order for her to offer useful expert testimony, Oshana would need to undergo "a full battery of psychological tests to substantiate/disprove what [Dr. Searle] observed in [their] brief sessions." (Emails at 2.) When counsel replied by explaining that Plaintiff only required testimony concerning the contents of Dr. Searle's report, Dr. Searle responded that she remained "unwilling to do that" because she knew "the kinds of questions that could be asked" and she "would not be able to answer based on the information" that she had. (*Id.* at 3, 4.) Dr. Searle later wrote directly to Oshana, stating that she was "not in any position to help [Oshana] in a trial setting" and "simply do[es] not have the skill that setting requires."[6] (*Id.*)

## A. Disclosure Requirement

Plaintiff acknowledges that she has not met the disclosure requirements of Rule 26(a)(2)(B). (Pl.'s Resp. Regarding Dr. Searle at 2.) Subsection (B) of Rule 26(a)(2) requires the disclosure of a written report, containing certain specified items, for any witness "retained or specially employed to provide testimony in the case." FED. R. CIV. P. 26(a)(2)(B). Though she cited subsection (B) in her Rule 26(a)(2) disclosure to Defendant, Oshana now claims she has instead met the disclosure requirements of subsection (C) of that same Rule. (Pl.'s Resp. Regarding Dr. Searle at 2.) Subsection (C) was added in a 2010 amendment to the Rule. *See* FED. R. CIV. P. 26, Committee Notes on Rules—2010 Amendment (hereinafter "2010 Committee Note"). It provides that witnesses who are not retained or specially employed to provide testimony need not provide a written report and instead must simply disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). The Committee Note for the 2010 amendment states that "this disclosure is

---

[6]        As this is the most recent email provided by the parties to the court, it is not clear that Dr. Searle will in fact be called to testify; if she is not, then Defendant's motion *in limine* to exclude her testimony is moot.

considerably less extensive than the report required by Rule 26(a)(2)(B)" and that "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained." 2010 Committee Note. "Frequent examples" of these witnesses, the note continues, "include physicians or other health care professionals." *Id.*

The court concludes that Dr. Searle's two-page summary report, though brief, is a sufficient disclosure under Rule 26(a)(2)(C). (Pl.'s Resp. Regarding Dr. Searle at 2.) Defendant initially argued that Oshana only "superficially" satisfied the requirements under subsection (C) (Def.'s Mot. *in Lim.* Regarding Dr. Searle at 5), but later stated that "[t]he parties agree that Dr. Searle can only testify as a 'treating physician' and not as a retained expert witness." (Def.'s Reply Regarding Dr. Searle [47] at 1.) With that limitation on the scope of Dr. Searle's testimony, Defendant's objection based on an inadequate disclosure is overruled.

### B. Substance of Dr. Searle's Testimony

The parties disagree about the consequences of designating Dr. Searle as a treating physician under subsection (C) rather than as a retained expert witness under subsection (B). As an initial matter, though, both parties cite *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729 (7th Cir. 2010), and are in apparent agreement that Dr. Searle may testify only about the facts that are in her summary report and the opinions she formed in the course of treating Oshana. (*See* Pl.'s Resp. Regarding Dr. Searle at 2; Def.'s Reply Regarding Dr. Searle at 1-2.)

It is not clear to the court that the parties' reliance on *Meyers* is warranted. The *Meyers* ruling was issued prior to the 2010 amendments, and thus the *Meyers* court was forced to decide how to classify treating physicians without an on-point rule of civil procedure. The court held that

> a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be *deemed* to be one "retained or specially employed to provide expert testimony in the case," and thus is required to submit an expert report in accordance with Rule 26(a)(2).

*Meyers*, 619 F.3d 729, 734-35 (emphasis added). The court's use of the word "deemed" in its holding is notable; treating physicians are generally sought for their treatment and are not

"retained or specially employed to provide expert testimony" as stated in subsection (B). Arguably, then, by directly addressing treating physicians in its committee notes, the 2010 amendment to Rule 26(a)(2) distinguishes this holding in *Meyers*.

Such has been the finding by some district courts in the years following *Meyers*. A court in the Northern District of Indiana found that, "[b]ecause the amendment to Rule 26 attempts to clarify the distinction between an expert retained to testify and one who will testify for reasons independent of trial preparation . . . the amendment overcomes the holding in *Meyers*." *Coleman v. Am. Fam. Mut. Ins. Co.*, 274 F.R.D. 641, 645 (N.D. Ind. 2011). In that case, where plaintiff consulted with the treating physicians for no purpose other than treatment, those physicians only needed to comply with the more limited disclosure requirements under subsection (C). *Id.* That was true even though the four experts in that case "intend[ed] to testify to the cause of [the plaintiff's] injuries." *Id.*; *see also Morrison v. Wal-Mart Stores, Inc.*, 321 F.R.D. 336, 338-39 (C.D. Ill. 2017) (noting that *Meyers* "interpreted a different version of Rule 26(a)(2)" and thus, for purposes of disclosure requirements, "*Meyers* and its progeny are . . . inapplicable").

At this juncture, the court need not decide whether *Meyers* still prohibits a treating physician, who was not disclosed according to subsection (B), from testifying about the cause of a plaintiff's injury where that opinion was formed outside the course of providing treatment. Oshana herself has not argued that Dr. Searle can provide such testimony. In addition, as discussed below, Dr. Searle has made it clear that she cannot reliably provide opinion testimony that exceeds the scope of her report, and her report only relays facts and opinions that were formed during Oshana's treatment sessions. The potential scope of her testimony is therefore quite limited, and even under *Meyers*, Dr. Searle would not be deemed a witness retained or specially employed to provide expert testimony. Thus, as both parties agree, Dr. Searle can only testify about the contents of her report and the opinions she developed while treating Oshana.

The issue for the court, then, is to determine whether there are facts and opinions in Dr. Searle's report from her sessions with Oshana that are relevant under Federal Rule of Evidence

22

702, and whether Dr. Searle is qualified to testify about them. Defendant argues that "[t]here simply is no relevant opinion, professional or otherwise, in the Treatment Summary that might 'help the trier of fact to understand the evidence or to determine a fact in issue.'" (Def.'s Mot. *in Lim.* Regarding Dr. Searle at 6 (quoting FED. R. EVID. 702(a)).) Defendant also argues that "[t]here are no 'facts' in the Treatment Summary other than Dr. Searle's recording of Plaintiff's statements to her during their therapy sessions." (Def.'s Reply Regarding Dr. Searle at 2.)

Dr. Searle herself describes her report as "a summary including diagnosis, clinical issues and treatment recommendations." (Dr. Searle Rep. at 2.) Scattered throughout the report are statements reflecting Dr. Searle's own thoughts and actions, such as her observation that "[d]epressive symptoms were more manifest in this session." (*Id.*) She also noted treatment strategies, including that Dr. Searle and Oshana together "made a list of behaviors that could help [Oshana] with this heightened anxiety," and that Dr. Searle made the determination that "[o]ngoing therapy is indicated to deal with the underlying anxiety that manifests itself in various ways." (*Id.* at 3.) In the report's summary paragraph, Dr. Searle offers a "diagnosis of Generalized Anxiety Disorder," and pointed out that "the focus of the patient's anxiety may shift from one concern to the other, as noted in the course of our four sessions of psychotherapy." (*Id.*)

As noted in the report, in at least two of the sessions, Oshana and Dr. Searle discussed the alleged incident involving Defendant. And Dr. Searle appears to draw a connection between that incident and Oshana's anxiety diagnosis, since the "focus" of Oshana's anxiety was on her concerns "noted in the . . . sessions." (*Id.*) The court expresses no opinion on the strength of this causation evidence. As Defendant points out, the fact that Oshana's focus was shifting "from one concern to the other" may suggest that factors other than the alleged incident were at least partially responsible for her anxiety. (Def.'s Mot. *in Lim.* Regarding Dr. Searle at 6.) For purposes of relevance under Rule 702(a), however, it appears that the report may "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a).

23

Finally, Defendant argues that Dr. Searle's testimony is unreliable and thus inadmissible according to Rule 702. (Def.'s Mot. *in Lim.* Regarding Dr. Searle at 6.) In support, Defendant points to Dr. Searle's emails to Plaintiff and Plaintiff's counsel, in which Dr. Searle casts doubt upon her willingness and ability to testify. In the court's view, Dr. Searle's comments on the limitations of her testimony are a basis for cross-examination; those comments do not disqualify her as a witness. As Plaintiff suggests, the court will permit Defendant to *voir dire* Dr. Searle prior to her testimony to ensure that what she will say will be the product of "reliable principles and methods." FED. R. EVID. 702(c). Defendant's Motion *in Limine* Regarding Dr. Searle [38] is provisionally denied.

## CONCLUSION

For the foregoing reasons, and subject to the conditions discussed above, the court grants Plaintiff's Motion *in Limine* Regarding the Application of Article 20 and 21 [34]; grants Plaintiff's Motion *in Limine* Regarding the August 26, 2017 Event [35]; grants in part and denies in part Plaintiff's General Motions *in Limine* [36]; denies Defendant's Motion *in Limine* on Bodily Injury Requirement [37]; and denies Defendant's Motion *in Limine* Regarding Dr. Searle [38].

ENTER:

Dated: January 12, 2022

_____
REBECCA R. PALLMEYER
United States District Judge